UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
ELIRA GOVORI,                          :    10 Civ. 8982 (DLC)
                                       :
                    Plaintiff,         :    OPINION & ORDER
          -v-                          :
                                       :
GOAT FIFTY, L.L.C. d/b/a NELSON BLUE   :
BAR AND GRILL and FRANK CASANO,        :
individually, as Owner.                :
                                       :
                    Defendants.        :
                                       :
---------------------------------------X

Appearances:

For Plaintiff:
Neal Brickman
Richard Norman Jefferson
The Law Office of Neal Brickman
317 Madison Avenue, 21st Floor
New York, NY 10017

For Defendants:
Lawrence Caruso Glynn
Caruso Glynn, LLC
53-04 193rd Street
Fresh Meadow, NY 11365

DENISE COTE, District Judge:

       Plaintiff Elira Govori ("Govori") has brought this

employment discrimination action against her former employer,

Goat Fifty, L.L.C. d/b/a Nelson Blue Bar and Grill and its

manager, Frank Casano (collectively "Goat Fifty"), under Title

VII and the New York State and New York City sex discrimination

laws.  Govori alleges that she was fired after she announced her

plans to undergo in vitro fertilization ("IVF").  Goat Fifty has

1

moved to dismiss for failure to state a claim, arguing that
Govori cannot prove sex discrimination because infertility is a
gender-neutral condition.  Because Govori has stated a cognizable
claim for sex-based discrimination under Title VII, Goat Fifty's
motion to dismiss is denied.


                              BACKGROUND
     The Complaint asserts three causes of action:  sex
discrimination in violation of the Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 et seq., as
amended by the Pregnancy Discrimination Act of 1978 (the "PDA"),
42 U.S.C. § 2000e(k); sex discrimination in violation of New York
State Executive Law § 296(1); and sex discrimination in violation
of New York City Administrative Code § 8-107(a).  The Complaint
principally argues that Goat Fifty unlawfully discriminated
against Govori by firing her for undergoing IVF.
     Govori was employed as a server at Nelson Blue Bar and Grill
("Nelson Blue"), an establishment owned and operated by Goat
Fifty in the South Street Seaport District of New York City.
Govori alleges that the female servers and bartenders at Nelson
Blue were encouraged to be flirtatious with patrons as part of
their job responsibilities.  Govori describes her relationship
with her supervisors at Nelson Blue as "very cordial and
friendly."  Indeed, Govori discussed her hopes of becoming a

mother with her two female supervisors, Michelle Gervais ("Gervais") and Diane Honeywell ("Honeywell"), and they were both supportive.

On December 7, 2009, Govori consulted physicians at Columbia University's Center for Women's Reproductive Care to initiate IVF.  Govori first discussed her IVF treatments with Gervais and Honeywell in February of 2010.  Govori continued to visit the Center and undergo testing and evaluation from December 7 until she was fired on March 15, 2010.  On March 11, Govori began the ovulation induction phase of her IVF treatment, and on March 12, Govori alerted her supervisors and other staff members at Nelson Blue that she had begun the induction phase of IVF.

Also on March 12, Govori observed Gervais drinking heavily out of grief.  Govori warned Gervais not to drink much so early in the day; Gervais then became upset and yelled at Govori.

The following day, March 13, Gervais sent a text message to Govori advising her that she should not come to work the next day.  On March 15, Govori called Gervais and was told that she was fired from her job at Nelson Blue.

On June 3, 2010, Govori filed a charge of discrimination against Goat Fifty with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right to sue letter on November 5, 2010, based on its finding that the evidence failed to indicate that a violation of Title VII had occurred.

3

Govori filed her complaint on December 1 and Goat Fifty moved to dismiss the Complaint on December 21.  The motion was fully submitted on January 27, 2011.

DISCUSSION

Goat Fifty has moved to dismiss on two principal grounds. First, Goat Fifty contends that women undergoing IVF are not members of a protected class under the PDA because infertility is a gender-neutral condition.  Second, Goat Fifty argues that even if discrimination against women undergoing infertility treatments is prohibited by Title VII, Govori has failed to adequately plead facts showing that she was in fact fired because of her decision to undergo infertility treatments.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations.  Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 475-76 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).

4

<u>Protection under the Pregnancy Discrimination Act</u>

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII was amended by the PDA to enact Congress's determination that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."  <u>Newport News Shipbuilding & Dry Dock Co. v. EEOC</u>, 462 U.S. 669, 684 (1983).  Thus the PDA further provides that

> the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of <u>pregnancy, childbirth, or related medical conditions</u>; and women affected by <u>pregnancy, childbirth, or related medical conditions</u> shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k) (emphasis supplied).

The Supreme Court clarified the scope of the PDA when it held in <u>International Union v. Johnson Controls, Inc.</u>, 499 U.S. 187 (1991), that the PDA prohibited a manufacturer of batteries from excluding fertile women from certain jobs involving lead exposure in order to protect the women's as yet unconceived offspring.  The manufacturer argued that its policy did not constitute sex-based gender discrimination because it classified

the women based on their fertility, a gender-neutral condition. The Supreme Court rejected this argument, however, holding that because the manufacturer did not seek to protect the unconceived children of all its employees, the policy "classifie[d] on the basis of gender and childbearing capacity, rather than fertility alone" and was thus prohibited sexual discrimination under Title VII.  Id. at 198.

More recently, in Saks v. Franklin Covey Co., 316 F.3d 337 (2d Cir. 2003), the Second Circuit held that an employer's denial of insurance coverage for surgical impregnation procedures performed for the treatment of infertility did not constitute unlawful sex-based discrimination under the PDA or Title VII. Id. at 346-47.  The court distinguished between reproductive capacity and pregnancy or related conditions.  Id. at 345.  The court reasoned that although surgical impregnation procedures for the treatment of fertility are performed only on women, "the need for the procedures may be traced to male, female, or couple infertility with equal frequency." Id. at 347.  Therefore, "the exclusion of surgical impregnation procedures disadvantages infertile male and female employees equally." Id. at 346.  The court thus held that "infertility standing alone does not fall within the meaning of the phrase 'related medical conditions' under the PDA." Id.  The court expressly declined to consider, however, the question of "whether an infertile female employee

would be able to state a claim under the PDA or Title VII for
adverse employment action taken against her because she has taken
numerous sick days in order to undergo surgical implantation
procedures." <u>Id</u>. at 346 n.4.

The Seventh Circuit took up that question in <u>Hall v. Nalco
Co.</u>, 534 F.3d 644 (7th Cir. 2008); it found that a female
employee who claimed she had been fired for taking time off to
undergo IVF procedures stated a cognizable sex-discrimination
claim under Title VII.  <u>Id</u>. at 649.  The <u>Hall</u> court reasoned that

> [e]mployees terminated for taking time off to undergo
> IVF -- just like those terminated for taking time off
> to give birth or receive other pregnancy-related care -
> - will always be women.  This is necessarily so; IVF is
> one of several assisted reproductive technologies that
> involves a surgical impregnation procedure.  Thus, . .
> . Hall was terminated not for the gender-neutral
> condition of infertility, but rather for the gender-
> specific quality of childbearing capacity.

<u>Id</u>. at 648-49.

The reasoning in <u>Hall</u> is persuasive and governs here.  As
the <u>Hall</u> decision correctly noted, only women undergo surgical
implantation procedures; therefore, only women and not men stand
in potential danger of being fired for missing work for these
procedures.  An employer who fires his female employee for
missing work for IVF treatment discriminates not on the basis of
reproductive capacity or infertility alone, but on the basis of
medical conditions related to pregnancy.  Thus, women who are
fired for undergoing IVF are protected from such discriminatory,

sex-based action by the terms of the PDA.

Defendants urge an extension of the holding of <u>Saks</u> to this context, arguing that the firing of a female employee for undergoing IVF constitutes gender-neutral discrimination on the basis of infertility alone.  The <u>Saks</u> court explicitly declined to extend its holding to adverse employment actions, however. <u>Saks</u> is distinguishable because, unlike the situation presented here, it involved a dispute over the extension of insurance coverage.  The question presented here is whether an employer, having assumed the financial responsibility of salaried employment, can then fire its female employee solely on the basis that she decided to undergo IVF treatments.  The two situations are far from analogous.  Accordingly, Govori has stated a cognizable claim for sex-based discrimination under Title VII, as amended by the PDA.


<u>Title VII Claim</u>

Goat Fifty further argues that even if adverse employment actions on the basis of infertility treatments is prohibited under Title VII, Govori fails to state a claim because her Complaint does not support a causal connection between Govori's decision to undergo IVF and her firing, and because Goat Fifty employed a pregnant server at the same time that it fired Govori. Claims of employment discrimination brought pursuant to Title VII

are analyzed under the familiar burden-shifting approach set
forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03
(1973).  A plaintiff bears the initial burden of establishing a
prima facie case of discrimination, and must demonstrate (1)
membership in a protected class; (2) qualifications for the
position; (3) an adverse employment action, and (4) circumstances
surrounding that action giving rise to an inference of
discrimination.  Ruiz v. County of Rockland, 609 F.3d 486, 491-92
(2d Cir. 2010).

The Supreme Court has made clear, however, that McDonnell-
Douglas sets forth "an evidentiary standard, not a pleading
requirement," and that an "employment discrimination plaintiff
need not plead a prima facie case of discrimination."
Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510, 515 (2002).
Rather, as long as the complaint gives the defendant "fair notice
of [the plaintiff's ] claim and the grounds upon which it rests,"
and "indicate[s] the possibility of discrimination and thus
present[s] a plausible claim for disparate treatment," the
complaint satisfies the strictures of Federal Rule of Civil
Procedure 8(a).  Boykin v. KeyCorp, 521 F.3d 202, 214-16 (2d Cir.
2008).

Govori has pleaded facts sufficient to allege a plausible
claim of employment discrimination.  Govori was fired the day
after she announced that she was moving from the evaluation and

diagnostic phase of IVF to the treatment stage.  According to the complaint, Goat Fifty prided itself on the friendly and indeed flirtatious atmosphere that its servers helped to create.  These facts are sufficient to create an inference that Govori was fired because her IVF treatments would require that she miss time from work, or because her treatment and subsequent pregnancy would put a damper on the kind of atmosphere the bar was attempting to create for its customers.

Goat Fifty's arguments to the contrary are unavailing. First, Goat Fifty argues that Govori does not establish that the timing of her firing was "suspicious" because she initially told her supervisors about the IVF evaluation in December, and she was fired in March.  Govori cites Rinsler v. Sony Pictures Entertainment, Inc., No. 02 Civ. 4096 (SAS), 2003 WL 22015434 (S.D.N.Y. Aug. 23, 2003), in support of its argument, but Rinsler dealt with a motion for summary judgment.  Moreover, although Govori's supervisors did learn that she was undergoing testing as a precursor to starting IVF, they did not learn of her intention to proceed with the treatment phase of IVF until March, according to the Complaint.

Goat Fifty stresses that Govori was fired because of her unpleasant demeanor.  It points out that it employed another pregnant server at the time Govori was fired, suggesting that Govori was fired for reasons other than her IVF treatments.  Goat

Fifty also emphasizes Govori's acknowledgment that Gervais and Honeywell were supportive of her ambitions of motherhood.  While these factors may bear on whether Govori can ultimately establish a prima facie case of discrimination and intentional discrimination, they do not show that Govori has failed to adequately plead a disparate treatment claim under Title VII.

CONCLUSION

Goat Fifty's December 21, 2010 motion to dismiss is denied.


SO ORDERED:

Dated:    New York, New York
          March 30, 2011

                                _____
                                     DENISE COTE
                                United States District Judge

11