UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ELIRA GOVORI,                          :        10 Civ. 8982 (DLC)
                                       :
                  Plaintiff,           :        OPINION & ORDER
          -v-                          :
                                       :
GOAT FIFTY, L.L.C. d/b/a NELSON BLUE   :
BAR AND GRILL and FRANK CASANO,        :
individually, as Owner.                :
                                       :
                  Defendants.          :
                                       :
-------------------------------------- X

Appearances:

For Plaintiff:
Neal Brickman
Richard Norman Jefferson
The Law Office of Neal Brickman
317 Madison Avenue, 21st Floor
New York, NY 10017

For Defendants:
Lawrence Caruso Glynn
Caruso Glynn, LLC
53-04 193rd Street
Fresh Meadow, NY 11365

DENISE COTE, District Judge:

     The defendants have moved for summary judgment in this

employment discrimination action.  For the following reasons,

the motion is granted.


                          BACKGROUND

     Plaintiff Elira Govori ("Govori") was employed as a server

at the Nelson Blue Bar and Grill (the "Nelson Blue") from

September 2008 to March 2010.  She was fired by her supervisor
Michelle Gervais ("Gervais"), who worked as the bartender at the
Nelson Blue.  Govori's employer, Goat Fifty, LLC ("Goat Fifty"),
which owns the Nelson Blue, contends that Govori's employment
was terminated because of a history of poor performance,
culminating in her yelling at a customer on her last day of
work.  Govori contends that she was fired because on her last
day of work she revealed that she had just begun in vitro
fertilization ("IVF") injections.  The evidence described below
is either undisputed or as presented by Govori, unless otherwise
indicated.

Govori had worked as a waitress at a restaurant called St.
Maggie's from November 2007 to May 2008.  When it refused to
grant her a leave of approximately three months so that she
could visit her parents in Kosovo, she quit.

After Govori returned from Kosovo, she applied for a job at
Nelson Blue.  Gervais and the Bar's general manager Diane
Honeywell ("Honeywell") hired Govori.  During most of her time
at Nelson Blue, Govori worked every day from 11 a.m. to 4 p.m.
except Saturday and Monday.

In Govori's opinion, Gervais and Honeywell were "extremely"
accommodating to her during her employment at the Bar.  Among
other things, they let her take three months off during the

summer of 2009 to travel once again to Kosovo and visit her family.[1]

Up until she was fired, Govori also found both Gervais and Honeywell supportive of Govori's desire to become pregnant, have a child, and undergo IVF treatments.  In November 2009, Govori consulted with physicians at the Center for Women's Reproductive Care at Columbia University ("Columbia") regarding her infertility.  Govori told Honeywell and Gervais in December of 2009 that she was going to need to take some days off in order to pursue IVF, and they permitted her to take the necessary time off that month.  From early December to February 2010, Govori underwent the testing necessary to commence IVF, but did not discuss the testing with anyone at work.  Govori did discuss more generally, however, her decision to undergo IVF treatments with customers and others at Nelson Blue and found people to be supportive of her decision.  At the beginning of February of 2010, she advised both Honeywell and Gervais that she would need to undergo IVF therapy in order to become pregnant.

As described by Govori during her deposition, IVF treatment includes hormone therapy through injections administered by the

---

[1] At some point during the winter of 2009-2010, however, Honeywell told Govori that she couldn't take the summer of 2010 off.  Govori does not argue that this decision was discriminatory.

patient at home over the course of ten to twelve days, ovulation induction, egg retrieval, fertilization of the egg in vitro, and then transfer of the embryo to the womb.  Govori began her first set of injections on March 11, 2010.  She believes that the egg retrieval and in vitro fertilization occurred on March 25.  She learned in April that the transfer of the embryo had failed to result in a pregnancy.

All parties agree that the events that precipitated the termination of Govori's employment occurred on Friday, March 12. According to Govori, the principal event of that day was her comment to Gervais that it was too early in the day to start drinking.  Gervais had just learned that her grandmother, who was in the hospital, was dying.  Indeed, her grandmother did die that very day.  According to Govori, Gervais was crying and drinking, even though it was only midday.  Govori told her not to start drinking that early; Gervais responded, "How can you say that, my grandmother is dying?"  Govori saw that Gervais was unhappy that she had made the comment and so she kept away from Gervais for the rest of the day.

There was only one other unpleasant incident that Govori remembers occurring on that day.  At the end of her shift she had an argument with a server named Emily.  They shared a drawer where they kept personal items.  Govori asked Emily not to push

her things to one side, and they argued.  After that argument,
Govori sent Honeywell a text complaining about Emily.

The only other thing that Govori can remember occurring
that day was a brief conversation that she had with Govori and
Honeywell when she arrived at work in the morning.  She told
them that she was proud she had been able to inject herself for
the first time the day before, referring to her IVF treatment.
She does not remember that either of them reacted or said
anything in response.

Gervais provides a different description of what occurred
on March 12.  She denies that she was drinking or that Govori
cautioned her against drinking.  According to Gervais, the event
that precipitated Govori being fired was Govori yelling at a
customer.  Gervais heard Govori yelling at one of the
restaurant's best customers, Robert Mullan ("Mullan"), "You just
don't like me because I'm not American like Gary and Emily."
Gervais confronted Govori and told her, "Keep your shit out of
here.  You do not talk to customers like that."  Govori denies
that this incident occurred.

Mullan eats almost daily at the Nelson Blue and considers
himself a friend of both Govori and Gervais.  He does not
remember Govori making any negative comment to him on that day,
but had noticed that Govori had been rude to him and other

customers on a number of occasions in the months before she was
fired.  Although Mullan doesn't remember Govori's comment,
several people have testified that that weekend and in the days
immediately following the termination of Govori's employment,
Gervais described Govori's comment to Mullan and explained that
it was the reason Govori was fired.

It is undisputed that Gervais and Govori had become good
friends during their work together.  Indeed, in Govori's view,
they were "very, very close."  Despite that friendship, Gervais
decided that Govori had to be fired.  On Saturday, she texted
Govori to tell her not to come to work on Sunday, and then got a
replacement for her.  Gervais told the replacement server that
Govori had said something "terrible" to Mullan and that "she's
done."  As that server remembers, Gervais added that Govori had
"snapped" at Mullan and told him that he liked two other waiters
better because they were American and she was from Kosovo.

Reflecting the tension that some incident on Friday had
created between these two friends, on that Saturday, Govori sent
the following message to Gervais:

> Hey Michelle I just want you to know something.
> Knowing you was the best thing happened to me since
> I'm in usa.  I learned a lot from you, being [sic] a
> boss and being [sic] caring and loving I never seen
> that EVER.  You misunderstood me on Friday, had
> nothing to w/u or anybody else.  I felt bad that
> you're upset.  I just want u to know that in my heart

6

you're my best thing and you'll always be, no matter
what.  Elira

Gervais waited until Honeywell returned from a weekend trip
out of town to discuss firing Govori with her.  Govori and
Honeywell discussed Govori's behavior on March 12, as well as
Govori's history of difficulties with customers and staff.

After Gervais and Honeywell agreed on the termination,
Gervais had a nine minute telephone conversation with Govori on
March 15 and fired her.  Gervais found it hard to fire someone
she considered a friend, and was crying during the conversation.
Govori tried to console her, and indicated that she understood
the decision.  Gervais remembers saying that they should think
of this not as Govori being fired but that they were parting
ways or taking separate paths.  Honeywell and Gary Neishloss, a
server, listened to Gervais make the call.

Govori does not have a good memory of the telephone call.
She had just emerged from the subway and was standing on the
street during the call.  She remembers that Michelle was crying
and not very clear.  She remembers that Gervais said something
about Govori having chosen another path.  Govori finally asked
Michelle, "Am I fired, am I not coming to work tomorrow?"  When
she was told she was fired, Govori was in shock.

Later that day, Gervais and Govori exchanged texts.  Govori
wrote, "I love you too, big hug."

7

Govori has been unemployed since being fired.  In January 2011, she began looking for a full-time waitress position using Craig's List and word-of-mouth but has gone to no interviews. She has continued with IVF treatments to no avail.

Goat Fifty owns seven restaurants.  It has employed four women who became pregnant while working for it and who remained employed during their pregnancies, including one who worked as a part-time server at the Nelson Blue during her pregnancy until she left voluntarily.  Govori has no evidence that Goat Fifty has ever discriminated against any other employee because of a pregnancy or efforts to become pregnant.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In cases involving allegations of employment discrimination, the court must exercise "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and

9

such intent often must be inferred from circumstantial evidence." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); see also Holcomb, 521 F.3d at 137. Even in an employment discrimination case, however, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb, 521 F.3d at 137. The ultimate test for summary judgment in discrimination cases, as in other cases, "is whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

Govori brings three causes of action: sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); sex discrimination in violation of the New York State Executive Law § 296(1) et seq. ("NYSHRL"); and sex discrimination in violation of New York City Administrative Code § 8-107 et seq. ("NYCHRL"). The defendants have moved for summary judgment on all three.

Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); see Holcomb, 521 F.3d at 137. Thus, "[a]n employment decision . . . violates Title VII when it is based in whole or in part on discrimination." Id. (citation omitted).

Title VII was amended by the PDA to enact Congress's determination that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983). Thus the PDA further provides that

> the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k) (emphasis supplied). As this Court previously held, women who are fired for undergoing IVF are protected from such discriminatory, sex-based action by the terms of the PDA. See Govori v. Goat Fifty, L.L.C., Dkt. No. 10 Civ. 8982 (DLC), 2011 WL 1197942, *3 (S.D.N.Y. 2011).

11

The same substantive standards generally apply to claims of employment discrimination under Title VII and the NYSHRL. Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). Claims brought under the NYCHRL are analyzed using the same framework as Title VII claims, Leibowitz v. Cornell Univ., 584 F.3d 487, 498 & n.1, but "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted).

Claims of employment discrimination brought under Title VII are analyzed using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. County of Rockland, 609 F.3d 486, 492 (2d Cir. 2010). A plaintiff's burden in presenting evidence to support a prima facie case is "de minimis." Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).

12

If the plaintiff satisfies this initial burden, "a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action." Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010).  If the defendant can offer such a reason, the presumption of discrimination dissolves, and "the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Id. (citation omitted).  The plaintiff may do so by showing that the defendant's reasons were pretextual or that the defendant's reasons "were not the only reasons and that the prohibited factor was at least one of the 'motivating factors.'" Holcomb, 521 F.3d at 138 (citation omitted).  Although the burden of producing evidence may shift between the parties under this framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Leibowitz, 584 F.3d at 499 (citation omitted).

It is assumed for purposes of this Opinion that Govori has carried her de minimis burden of demonstrating a prima facie case of discrimination.  The defendants have offered evidence of non-discriminatory reasons for terminating Govori's employment.

13

They have offered affidavit and deposition evidence from customers, co-workers and managers that Govori struggled to perform her job for three to four months before she was fired. She was rude to and ignored customers, she didn't do some of the menial tasks expected of servers, she had difficulty working with the other employees, and she generally appeared unhappy and unwilling to work well with others.  It was this history of poor performance that motivated Gervais, despite her friendship with Govori, to fire Govori after Govori yelled at an important customer of the restaurant on March 12.

Govori denies that she was unhappy at work or that she engaged in most of the misconduct to which the defendants have pointed.  She does admit that she offered unwelcome advice to her supervisor and had an argument with a fellow server on March 12.  Govori contends, however, that these incidents did not lead to the termination of her employment.

Govori argues that she was fired because she told Gervais and Honeywell on March 12 that she had begun the IVF treatments and the defendants did not want to give her the time off that she would need during her IVF treatments.  There are several difficulties with Govori's theory.

First, Govori admits that she never explained what the IVF treatments entailed to anyone at work.  She does not contend

14

that she ever told the defendants how much time off she would
need or that she would need any change in her schedule.  Indeed,
she does not describe in this motion what work schedule she may
have preferred as of March 12, 2010.  As a result, she has not
offered any evidence that the defendants had any expectations
whatsoever regarding what accommodations she might seek.  She
has also offered no evidence that the IVF treatments required
her to take a leave of absence or intermittently to stop
working.

Second, Govori admits that Nelson Blue was very
accommodating to her scheduling requests.  Other than the
defendants' decision that she wouldn't be able to take off the
entire summer of 2010 -- a decision which Govori admits had
nothing to do with their knowledge of her efforts to become
pregnant -- Govori has not identified one occasion on which the
defendants denied a request she had made to change her schedule
or take time off.

Third, the defendants had known since at least December
2009 that Govori wanted to become pregnant and was working with
doctors to help make that happen.  She admits that both Gervais,
who she considered a friend, and Honeywell were supportive of
those efforts.  She was sufficiently confident of that support

to discuss her plans to use IVF publicly at Nelson Blue with not
only staff but also customers.

Fourth, Govori admits that she had a confrontation with
Gervais on March 12 that had nothing to with her IVF treatments.
While Govori denies that it concerned her comment to Mullan, she
admits that she criticized her supervisor and that her
supervisor was angry with her for doing that.  She also admits
to having a fight with a co-worker.  If Govori's employment were
terminated for any of these incidents, it would not be due to
actionable discrimination.  An employer is entitled to set its
own requirements of job performance and it is not the job of the
courts to second guess the wisdom of those expectations or
decisions.  See Fisher v. Vassar College, 114 F.3d 1332, 1361
n.13 (2d Cir. 1997) (Calbresi, J., concurring in part and
dissenting in part) (a court should not "set the standards for
the employer"; rather, it should "let the employer set its own
(non-discriminatory) standards").

Govori has relied on two pieces of evidence to carry her
burden of showing that the defendants engaged in intentional
discrimination.  Govori's evidence of intentional discrimination
rests on the fact that on her last day of employment she
informed Gervais and Honeywell that she had injected herself as
part of the IVF treatment, and on Gervais's comment when she

fired Govori that Govori had taken a different path.  In this context, it is helpful to note that Govori has not identified any similarly situated employee that the defendants treated more favorably, has not offered evidence that the defendants engaged in a pattern or practice of intentional discrimination against those who are pregnant or attempting to become pregnant, and has not suggested that the defendants or their employees made invidious comments about pregnancy or pregnant women.

Neither of these two statements to which Govori points is sufficient to permit a jury to find that the defendants engaged in intentional discrimination.  When Govori told Gervais and Honeywell that she had begun the IVF injections, Govori did not say anything that would have led either woman to believe that Govori would now need any accommodation in her work schedule or in any other way.  Neither woman commented on Govori's announcement or responded in any negative way to the news.  As Govori admits, Gervais was preoccupied that day with her grandmother's health and imminent death.  Because Govori had not been forthcoming at work with the details of the IVF process, there is no evidence from which a jury could conclude that Govori's statement that morning carried much significance for either Gervais or Honeywell.

17

As for Gervais's comment that Govori had chosen a different path, that comment is too ambiguous to constitute evidence of intentional discrimination.[2]  This phrase is not a common reference to pregnancy or motherhood or reasonably understood as one.  Without any other evidence to support an inference of discrimination, the use of this ambiguous phrase during this emotional telephone call between two friends is insufficient to raise a question of fact requiring a jury trial.

There is no support for a different outcome for the plaintiff's sex discrimination claim brought pursuant to the NYCHRL.  "Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall."  Loeffler, 582 F.3d at 278 (citation omitted).  Even assuming the plaintiff made out a prima facie claim of discrimination, she has failed under any reading of the evidence to show that the defendants' proffered reason for firing her was a pretext for discrimination or that discrimination played any role.

---

[2] It is assumed for purposes of this motion that the statement is as Govori reports, although Govori readily admits that she has a poor recollection of the conversation.

CONCLUSION

The defendants' motion for summary judgment is granted.
The Clerk of Court shall enter judgment for the defendants and
close the case.

SO ORDERED:

Dated:    New York, New York
          February 8, 2012

_____
                DENISE COTE
          United States District Judge